## TOTOREAN v SAMUELS

1. EQUITY—FIDUCIARY RELATIONSHIP—QUESTION OF FACT.
   The existence of a fiduciary relationship is a question of fact.

2. APPEAL AND ERROR—FINDINGS OF FACT—COURT RULES.
   The Court of Appeals will not set aside findings of fact by the trial court unless they are clearly erroneous (GCR 1963, 517.1).

3. EQUITY—FIDUCIARY RELATIONSHIP.
   A fiduciary relationship exists only when there is a reposing of faith, confidence, and trust and the placing of reliance by one upon the judgment and advice of another.

4. DEEDS—EQUITY—FIDUCIARY RELATIONSHIP—UNDUE INFLUENCE—PRESUMPTIONS—BURDEN OF PROOF.
   A rebuttable presumption of undue influence in inducing another to give by warranty deed a gift of her farm to her daughter and son-in-law is raised by a fiduciary relationship between the daughter and the 83-year-old, illiterate, widowed, and bereaved mother where the daughter possessed her mother's general power of attorney and was substantially involved in her mother's financial affairs; this presumption requires the daughter and son-in-law to have the ultimate burden of proving the validity of the deed.

5. EVIDENCE—PRESUMPTIONS—INFERENCES—BURDEN OF PROOF.
   A presumption is substantive evidence and, even if rebutted, remains in the case as a permissible inference, and the *immediate* effect of a presumption is to shift the burden of going forward with the evidence related to the presumed fact.

6. TRIAL—EVIDENCE—PRESUMPTIONS—INFERENCES—BURDEN OF PROOF.
   The trier of fact should return a verdict for the plaintiff where (1)

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 23 Am Jur 2d, Deeds § 149.
[2] 53 Am Jur, Trial § 1131.
[4] 23 Am Jur 2d, Deeds §§ 148–152, 154.
[5, 6] 53 Am Jur, Trial § 597.

the plaintiff has the benefit of a presumption which has been rebutted and reduced to a permissible inference, and (2) the trier of fact determines the evidence of plaintiff and defendant to be equal; this means the ultimate burden of proof is on defendant, not the plaintiff.

Appeal from Macomb, George R. Deneweth, J. Submitted Division 2 December 11, 1973, at Lansing. (Docket No. 16417.) Decided March 6, 1974. Leave to appeal granted, 392 Mich —.

Complaint by Florence Totorean against John Samuels and Lydia Samuels to set aside a warranty deed. Judgment for plaintiff. Defendants appeal. Affirmed.

*Oster, Mullett, Bender & Thompson,* for plaintiff.

*McLean, Sawyer & Kramer, P. C.,* for defendants.

Before: J. H. GILLIS, P. J., and R. B. BURNS and R. H. CAMPBELL,* JJ.

J. H. GILLIS, P. J. Plaintiff, Florence Totorean, brought this action to set aside a warranty deed given by her to defendants, her daughter and son-in-law. The June 28, 1966 deed, conveying plaintiff's farm in Macomb County, reserved to plaintiff a life estate. Plaintiff, an 83-year-old widow, is a native of Romania. She came to this country at the age of 24. She is totally illiterate and her ability to speak and understand English is minimal. Mrs. Totorean had two children; defendant, Lydia, and a son, Gregor, who died in January of 1966. Her divorced son left two children, Brenda and Gregore.

In 1958, two years after her husband's death,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff executed a general power of attorney in favor of Lydia. Lydia's involvement in her mother's financial matters increased substantially after Gregor's death. After the deed was executed, Lydia handled all of plaintiff's affairs.

The death of plaintiff's son precipitated a family crisis. Plaintiff was depressed over his death for several months. At about this time, Gregore broke out of a youth center and Brenda was pregnant out of wedlock. Lydia made several trips to Michigan from her Pennsylvania home to assist plaintiff. In September 1967, plaintiff went to live with defendants. The farm furnishings were auctioned off and the property leased. After a year in Pennsylvania, Mrs. Totorean returned to Michigan and lived with her grandchildren. In August of 1972, she moved back to the farm.

The deed in question was prepared by an attorney paid for and selected by Lydia. She first went to the lawyer's office alone to discuss the situation. She returned with plaintiff twice, once to discuss the conveyance and once to sign the deed. Lydia acted as interpreter at these meetings, although there was a minimum of direct conversation in English between the attorney and plaintiff. The attorney testified that he was convinced plaintiff understood the transaction. There was no discussion of alternative means of disposition such as a will or guardianship.

Lydia testified that plaintiff wanted her to have the farm because of plaintiff's disenchantment with the grandchildren and to avoid probate costs. Plaintiff claims she never wanted to sell or give away the farm, and that she did not know of the existence of the deed until shortly before the commencement of this action. Plaintiff testified that she went to the attorney's office at Lydia's

request with the understanding that by making her mark on the instrument she would receive a $2,500 payment due her as mortgagee of other property.

The trial court determined that a fiduciary relationship existed between plaintiff and defendant Lydia, and that because of this relationship defendants had the burden of proving the fairness of the deed. The court, finding that defendants failed to sustain this burden, held for plaintiff. From a denial of their motion for a new trial, defendants appeal.

Defendants first contend that there was insufficient evidence to support the court's finding of a fiduciary relationship. They explain the relationship between Lydia and plaintiff simply as that of a loving daughter taking care of her old mother. The existence of a fiduciary relationship is a question of fact. *Taylor v Klahm,* 40 Mich App 255; 198 NW2d 715 (1972). This Court will not set aside findings of fact by the trial court unless they are clearly erroneous. GCR 1963, 517.1. A fiduciary relationship exists only "when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another". *In re Jennings' Estate,* 335 Mich 241, 244; 55 NW2d 812, 813 (1952); *Mannausa v Mannausa,* 370 Mich 180, 184; 121 NW2d 423, 425 (1963); *Williams v Griffin,* 35 Mich App 179, 183; 192 NW2d 283, 285 (1971); see *Van't Hof v Jemison,* 291 Mich 385; 289 NW 186 (1939). A colloquy between plaintiff's attorney and defendant Lydia reads as follows:

"*Q.* Was there any particular reason why your mother gave you this power [of attorney]?

"*A.* Well, my mother always had full confidence in me.

"*Q.* Yes?

"*A.* And she trusted me completely as she wanted me to act in her behalf. She never questioned anything I did for her. We always had a mutual understanding. Our relationship was always good and always has been."

Similar testimony appears throughout the record. We think there is sufficient evidence of a fiduciary relationship; the trial court's finding is not clearly erroneous.

This confidential relationship between Lydia and her mother, plus the gift of the farm to Lydia and her husband, raises a rebuttable presumption of undue influence by defendants. *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965); *In re Kanable Estate,* 47 Mich App 299; 209 NW2d 452 (1973). The nature and effect of presumptions, particularly presumptions of undue influence, are set forth in the landmark case of *In re Wood Estate, supra,* 288–290; 132 NW2d 42–43:

"Presumptions in the law are almost invariably crystallized inferences of fact. Experience has taught that if certain evidentiary facts be established, there is such a strong practical likelihood that another stated fact will be true that that fact may be presumed. The law's special recognition of this lesson of experience is expressed by its rulings that if a litigant proves evidentiary facts A and B, then fact C's existence will be presumed.

"The immediate legal effect of a presumption is procedural—it shifts the burden of going forward with the evidence relating to the presumed fact. Once there is a presumption that fact C is true, the opposing party must produce evidence tending to disprove either facts A and B or presumed fact C; if he fails to do so, he risks jury instruction that they must presume fact C to have been established.

"Suppose, however, that such controverting evidence is produced. The initial force of the presumption as a

procedural rule of law shifting to the opposite side the burden of going forward with the evidence to avoid a directed verdict is spent and so fact C is no longer the mandatory inference it otherwise would have been. Nonetheless, the evidentiary facts A and B from which fact C could be inferred, and would have been inferred mandatorily but for the controverting evidence, are still present for jury consideration. Instead of being a mandatory inference, fact C now is merely what it would have been but for the attachment of the term 'presumption' to the particular evidentiary situation involved, namely, a permissible inference."

This makes it clear that (1) a presumption is substantive evidence and, even if rebutted, remains in the case as a permissible inference; and (2) the *immediate* effect of a presumption is to shift the burden of going forward with the evidence related to the presumed fact. However, *Wood* does not *specifically* answer one important question: Does a rebuttable presumption of undue influence shift the ultimate burden of proof from plaintiff to defendant? That is the key question in this case. The trial judge ruled that the presumption does put the ultimate burden of proof on defendant.[1] If this ruling is correct, we must affirm.

Defendants cite us to two cases in support of their position that while the presumption shifts the burden of going forward with the evidence, the ultimate burden is always on the plaintiff. *Straith v Straith,* 355 Mich 267, 275–276; 93 NW2d 893, 897–898 (1959), a pre-*Wood* case, held:

"While it is true that a presumption is raised that

---

[1] The trial judge simply held that (1) because of the fiduciary relationship defendants had the burden of proof and (2) they failed to sustain that burden. He made no specific finding as to whether or not defendants rebutted the presumption. Consequently, we find it unnecessary to do so here.

calls for an explanation, the burden of proof to show undue influence is not to be shifted. *In re Bailey's Estate,* 186 Mich 677 [153 NW 39 (1915)].

"We quote from *Hill v Hairston,* 299 Mich 672, 679 [1 NW2d 34, 36 (1941)], where Justice BUSHNELL, speaking for the Court, said:

" 'We are not unmindful that this Court said as recently as *Beattie v Bower,* 290 Mich 517, 529 [287 NW 900, 905 (1939)], that, under the authority of *Connor v Harris,* 258 Mich 670, 677 [242 NW 804, 807 (1932)], and authorities therein cited:

" ' " 'The grantor was peculiarly under the care, control, and domination of defendant, who stood in a fiduciary relation to her, and obtained, without consideration, a large amount of property from grantor. Under such circumstances the burden of proof is upon defendant to show the fairness and good faith of the transaction.' " '

" 'The rule is better expressed in the quotation from *Gillett v Michigan United Traction Co,* 205 Mich 410, 414 [171 NW 536, 538 (1919)], in *Re Cotcher's Estate,* 274 Mich 154, 159 [264 NW 325, 326 (1936)], as follows:

" ' " 'It is now quite generally held by the courts that a rebuttable or prima-facie presumption has no weight as evidence. It serves to establish a prima-facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself.' " ' "

*Straith's* reliance on *Hill v Hairston, supra,* greatly diminishes its present precedential value. The result in *Hill* was based largely on the theory that a presumption has no weight as evidence. This theory was discarded in *Wood.* However, *Williams v Griffin,* 35 Mich App 179; 192 NW2d 283 (1971), relying on *Wood* concluded that the ultimate burden of proof remains with plaintiff throughout trial.

We think the *Williams* Court misread *Wood.* We read *Wood* as standing for the proposition that a rebuttable presumption shifts the burden of proof. In dicta the *Wood* Court said:

"Finally, in every case in which evidence has been offered to rebut presumed fact C, the jury should be instructed that in the event it cannot decide upon which side the evidence preponderates, then as a matter of law fact C must be presumed." *In re Wood, supra,* 295; 132 NW2d 46.[2]

Therefore, in those cases where (1) plaintiff has the benefit of a presumption which has been rebutted and, thus, reduced to a permissible inference; and (2) the trier of fact determines the evidence of plaintiff and defendant to be equal, the trier of fact should return a verdict for the plaintiff. This can only mean the ultimate burden of proof is on defendant—not plaintiff.

Two post-*Wood* cases have so held. The trial court relied on *Grondziak v Grondziak,* 383 Mich 543; 177 NW2d 157 (1970). There a mother and stepfather deeded property to one of their sons and his wife, reserving a life estate. After their parents' deaths, the other children brought suit to cancel the deed. In upholding the conveyance, the Court ruled that the defendants had the burden of proving the fairness of this deed. Quoting from the Court of Appeals' decision,[3] the Court reasoned:

"Whatever the correct label may be, whenever one member of a family is in a fiduciary relationship with his parents and he receives almost all of the parents' property, society looks to him to establish his right to it

---

[2] In the case at bar, presumed fact C is undue influence by defendants. Presumed fact C is based on evidentiary fact A, the fiduciary relationship, and evidentiary fact B, the deed to defendants.

[3] *Grondziak v Grondziak,* 12 Mich App 61; 162 NW2d 354 (1968).

and to demonstrate that he did not acquire the property improperly." *Grondziak, supra,* 545; 158.

Likewise, this Court in *In re Kanable Estate, supra,* 303; 209 NW2d 454, held that the presumption of undue influence "shifts the burden of proof".

We hold that the trial court was correct in ruling that defendants had the ultimate burden of proving the validity of the deed.

Affirmed. Costs to plaintiff.

All concurred.